1
2
3
4
5
6
7
8                    **UNITED STATES DISTRICT COURT**

9                   **SOUTHERN DISTRICT OF CALIFORNIA**

10

PALOMAR MEDICAL CENTER,    )   Civil No. 09cv605 BEN (NLS)
11                             )
                  Plaintiff,   )   **REPORT AND RECOMMENDATION**
12  v.                          )   **FOR ORDER:**
                             )
13  KATHLEEN SEBELIUS, Secretary of the )   **(1) DENYING PLAINTIFF'S MOTION**
  United States Department of Health and  )   **FOR SUMMARY JUDGMENT [Doc. No.**
14  Human Services,               )   **19]; and**
                           )
15               Defendant.  )   **(2) GRANTING DEFENDANT'S CROSS**
                           )   **MOTION FOR SUMMARY**
16 ————————————————————— )   **JUDGMENT [Doc. No. 24].**

17                            **INTRODUCTION**

18        Under the Medicare program, plaintiff Palomar Medical Center (Plaintiff), was reimbursed for

19  medical services provided to John Doe.[1]  Under the Medicare Recovery Audit Contractor program,

20  defendant Kathleen Sebelius, as Secretary for the Department of Health and Human Services (Secretary

21  or Defendant), reopened Plaintiff's Medicare claim for John Doe, and subsequently determined the claim

22  was overpaid.  Plaintiff filed suit against the Secretary, asserting that the reopening was procedurally

23  invalid because the Secretary failed to show good cause to reopen the claim.

24        The Secretary disagrees and asserts that under the Medicare regulations, a decision whether to

25  reopen a claim is not appealable.  The Secretary also argues that if the court finds the decision to reopen

26  is appealable, Plaintiff did not exhaust its administrative remedies as to whether there was good cause to

27  ———————————————

28      [1] John Doe is an alias for the patient whose care is at issue.  He is not a party to this action and
his identity is not relevant to the instant claims.  He has been de-identified in compliance with Title II of
the Health Insurance Portability and Accountability Act of 1996 (HIPAA). Pub. L. No. 104-191, 110
Stat. 1936, 1991.

reopen the claim, and thus the issue should be remanded to the Medicare Appeals Council.

Judge Benitez referred the case to Judge Stormes for report and recommendation. The parties filed these cross summary judgment motions. Having considered all the papers submitted, the Court **RECOMMENDS** that Plaintiff's Motion for Summary Judgment be **DENIED** and Defendant's Motion for Summary Judgment be **GRANTED**.

**BACKGROUND**

### 1.    The Medicare Program.

The Medicare program, as established by Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395 *et seq*., reimburses health care providers for medical care provided to eligible aged and disabled persons. The Medicare program is administered by the Centers of Medicare and Medicaid Services (CMS) on behalf of the Secretary. The CMS contracts with entities known as "fiscal intermediaries" (FIs) to act as the Secretary's agents in administering the program. *See* 42 U.S.C. § 1395h. Generally, FIs are private insurance companies. *Cedars-Sinai Medical Center v. Shalala*, 939 F. Supp. 1457, 1460 (C.D. Cal. 1996).

After providing a medical service, hospitals or other institutional health care providers can request payment from CMS through an FI. The FI will then issue an "initial determination" to decide whether the claims are for covered services, and if so, the appropriate amount for reimbursement. 42 U.S.C. § 1395ff(a); 42 C.F.R. § 405.920. A provider dissatisfied with an initial determination may seek a "redetermination" from the FI. 42 C.F.R. § 405.940. A provider dissatisfied with a redetermination may seek a "reconsideration" from a separate Medicare contractor, a Qualified Independent Contractor (QIC). 42 C.F.R. § 405.960. A provider dissatisfied with a reconsideration may appeal to an Administrative Law Judge (ALJ), and thereafter, to the Medicare Appeals Council (MAC). 42 C.F.R. § 405.100 *et seq*.; 42 C.F.R. § 405.1100 *et seq*. "MAC decisions constitute the final decision of the Secretary and can be appealed to a Federal court." 70 Fed. Reg. 11421 (Mar. 8, 2005).

### 2.    Reopening of a Claim Under the Recovery Audit Contractor Program.

Congress enacted a three-year demonstration program (from March 2005 to March 2008) "to detect and correct improper payments [*i.e.*, overpayments or underpayments]."[2] CMS, RAC Demonstration, *available at* http://www.cms.hhs.gov/RAC/02_ExpansionStrategy.asp (last visited

---

[2]    The RAC program has since been made permanent. *See* 42 U.S.C. § 1395ddd(h).

4/22/2010).  On April 27, 2007, PRG-Schultz, the Medicare Recovery Audit Contractor (RAC) in California, initiated an audit of Medicare claims reimbursed to Plaintiff for services rendered to John Doe in 2005.  (AR pp. 3-4, 276-278.)  On July 10, 2007, PRG-Schultz reopened Plaintiff's claim and notified Plaintiff that it had been overpaid $7,992.92, and that it must reimburse the overpayment.[3]  (AR p. 4, 24, 273-274.)  On September 29, 2007, Plaintiff appealed the overpayment determination and requested a redetermination.  (AR pp. 24, 43.)  On December 18, 2007, the FI issued an unfavorable redetermination, stating the medical services provided were not medically necessary.  (AR p. 43.)  On January 31, 2008, Plaintiff requested a reconsideration.  (AR p. 43.)  The QIC upheld the denial in a reconsideration decision.  (AR p. 4.)

### 3.    The ALJ Decision.

On May 27, 2008, Plaintiff requested an ALJ hearing.  (AR p. 44.)  On August 12, 2008, a telephonic hearing was held.  (AR p. 44.)  The ALJ agreed with the FI and QIC that the services Plaintiff  rendered to John Doe were not medically necessary.  (AR p. 57.)  The ALJ, however, reinstated the initial determination and reversed the overpayment on the sole basis that he found "the RAC . . . failed to establish good cause for reopening [the] decision" and therefore ". . . failed to satisfy regulatory requirements . . ."  (AR pp. 54, 57.)  The ALJ held that (i) good cause was required to reopen the claim; (ii) the ALJ had jurisdiction to consider whether the reopening was supported by good cause; and (iii) PRG-Schultz had not sufficiently asserted such good cause.  (AR pp. 43-58.)

The ALJ reasoned he had jurisdiction to consider whether a contractor complied with the Medicare regulations in reopening the claim because without such a review, "there would be no process by which a provider could challenge the legality of a specific contractor reopening" and ". . . would leave an individual provider . . . with no opportunity to challenge the lawfulness of [that] particular reopening."  (AR p. 54.)  According to the ALJ, providers should not be denied "the right to challenge the lawfulness of a reopening, particularly where there are extant regulations that list very specific timeliness and procedural requirements."  (AR p. 55.)  According to the ALJ, "only the discretionary decision whether or not to reopen is shielded from review by 42 C.F.R. § 405.980(a)(5)."  (AR p.55.)

---

[3]  A reopening is defined as a remedial action taken to change a final determination or decision that resulted in either an overpayment or underpayment, even though the determination or decision was correct based on the evidence in the record.  *See* 42 C.F.R. § 405.980(a)(1).

1  Therefore, the ALJ held that the reopening was procedurally invalid and reinstated the pre-RAC initial

2  determination to pay in full Plaintiff's request for reimbursement.  (AR pp. 58-59.)

3      **4.    The Medicare Appeals Council Decision.**

4      The Medicare Appeals Council (MAC), on its own motion, decided to review the ALJ's

5  decision.  It determined that "the ALJ erred by concluding that [Plaintiff] was entitled to payment for

6  services rendered in that the RAC failed to show good cause for reopening the claim."  (AR p. 10.)  The

7  MAC determined that "neither the ALJ nor [the MAC] [had] jurisdiction to review" the legality of the

8  reopening because the decision to reopen "is final and not subject to appeal."  (AR p. 7.)  The MAC also

9  affirmed the overpayment due to lack of medical necessity.  (AR p. 14.)

10     The MAC explained that under 42 C.F.R. §§ 405.980(a)(5) and 405.926(l), ". . . the ALJ did not

11 properly have jurisdiction to address the issue of the RAC's reopening of the claim, [and therefore,] it

12 was not appropriate for the ALJ to address the issue of whether or not the RAC had good cause to

13 reopen the initial determination."  (AR p. 10.)  Further, ". . . the RAC's decision to reopen the claim is

14 not subject to the administrative appeals process."  (AR p. 10.)  Also, "CMS has expressly stated that the

15 enforcement mechanism for good cause standards lies within its evaluation and monitoring of contractor

16 performance, not the administrative appeals process."  (AR p. 7 citing 70 Fed. Reg. 11419, 11453 (Mar.

17 8, 2005).)

18     Accordingly, the MAC (1) reversed the ALJ's finding that he had jurisdiction to address the

19 issue of good cause to reopen the claim; (2) affirmed the ALJ's finding that Plaintiff provided services

20 that were not reasonable and necessary; and (3) reversed the ALJ's finding that Plaintiff is entitled to

21 payment for services provided to the beneficiary because the RAC failed to show good cause to reopen

22 the claim.  (AR pp. 13-14.)

23      **DISCUSSION**

24     Plaintiff appeals the MAC's determination that the RAC's failure to show good cause for

25 reopening a claim more than one year and less than four years old is not appealable.  Plaintiff argues that

26 the MAC's decision was arbitrary, capricious, and an abuse of discretion, and contends the reopening

27 should be reversed because it was procedurally invalid.  Plaintiff also asserts that the Secretary has

28 deprived it "due process by failing to provide any forum in which [Plaintiff] may contest the legality of

4

1   the reopening."  (Pl.'s Mot. for Summ. J. 2:7-8.)  Further, Plaintiff argues that this Court has jurisdiction

2   to determine whether in fact there was good cause to reopen the claim.

3        Defendant argues that Plaintiff cannot contest the basis for reopening the claim because under 42

4   C.F.R. § 405.980(a)(5) "the decision on whether to reopen is final and not subject to appeal."  Because

5   Plaintiff cannot appeal the lack of good cause for the reopening, Defendant argues it can only contest the

6   subsequent decision rendered after the reopening.  If the Court vacates the MAC's decision regarding

7   appealability of the reopening of the claim, Defendant argues that Plaintiff has not exhausted its

8   administrative remedies with regard to whether the RAC had good cause to reopen the claim because the

9   MAC did not review the issue.

10       **A.**    **Standard of Review**

11        The parties disagree on the standard of review and deference this court should afford to the

12   Secretary's interpretation of her own regulations.  Plaintiff argues the Secretary has limited discretion in

13   construing her regulations.  Specifically, Plaintiff argues that the agency's interpretation should be

14   evaluated under *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944), and should be given "weight to the

15   extent that it has the 'power to persuade, if lacking power to control.'"  (Plaintiff's MSJ 8:19-22.)

16   Plaintiff argues that "where adversarial proceedings expose ambiguity, conflict, or outright silence in the

17   applicable regulatory framework, the Secretary's discretion in construing provisions is, quite simply and

18   of necessity, limited by considerations of fairness."  (Plaintiff's MSJ 8:2-9:2 (citing *Powell v. Heckler*,

19   789 F.2d 176, 180 (3rd Cir. 1986)).  Plaintiff also argues that the agency's decision should be afforded

20   little to no deference because the  reopening of claims involves procedural considerations usually

21   assigned to a judiciary's field of expertise, and is not within the agency's expertise.  (Plaintiff's MSJ

22   8:23-24.)  The Secretary argues that her interpretation of her regulations should be afforded substantial

23   deference in accordance with *Thomas Jefferson University v. Shalala*, 512 U.S. 504, 512 (1994).

24        Courts must defer to an agency's interpretation and application of its own rules when Congress

25   delegates such rule-making authority to that agency.  *Gonzalez v. Oregon*, 546 U.S. 243, 255-256

26   (2006); *see Chevron, U.S.A., Inc. v. Nat'l Resources Defense Council, Inc.*, 467 U.S. 837, 842-844

27   (1984).  Under *Chevron*,

28   */ / /*

> [i]f Congress has explicitly left a gap for the agency to fill [in a congressionally created program], there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation. Such legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute.

467 U.S. at 843-844.  If "the legislative delegation to an agency on a particular question is implicit rather than explicit, . . . a court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency." *Id.* at 844.  Therefore, an agency's interpretation of a statute must be affirmed if Congress made an express delegation to the agency and the agency's construction is not arbitrary, capricious or manifestly contrary to the statute.  *See Johnson v. Buckley*, 356 F.3d 1067, 1073 (9th Cir. 2004).

Moreover, an agency's interpretation of its own regulations must be given substantial deference:

> We must give substantial deference to an agency's interpretation of its own regulations. [Citation.] . . . [T]he agency's interpretation must be given "controlling weight unless it is plainly erroneous or inconsistent with the regulation." [Citation.]  In other words, we must defer to the Secretary's interpretation unless an "alternative reading is compelled by the regulation's plain language or by other indications of the Secretary's intent at the time of the regulation's promulgation."

*Thomas Jefferson University v. Shalala*, 512 U.S. 504, 512 (1994).

Here, the regulations at issue are not ambiguous because they specifically state in two different subsections that a decision to reopen is not appealable:

> 1.  "Actions that are not initial determinations and are not appealable under this subpart include . . . [a] contractor's, QIC's, ALJ's, or MAC's determination or decision to reopen or not to reopen an initial determination, redetermination, reconsideration, hearing decision, or review decision" (42 C.F.R. § 405.926(l)); and

> 2.  "The contractor's, QIC's, ALJ's, or MAC's decision on whether to reopen is binding and not subject to appeal." (42 U.S.C. § 405.980(a)(5))."

This language is clear and unambiguous.  The Court, therefore, adopts the *Chevron* standard, because the *Skidmore* standard only applies when regulations are ambiguous.  Further, an agency can interpret a regulation regarding the reopening of claims, as such a matter is not expressly assigned to the judiciary.  *See, e.g., Your Home Visiting Nurse Servs., Inc. v. Shalala*, 525 U.S. 449 (1999) (the Supreme Court deferred to an agency's interpretation of a *federal* statute regarding reopenings even though it did not

1   appear that any agency expertise was involved in making the interpretation).

2        Based on the relevant case law, this Court will afford the Secretary's interpretation of the

3   Medicare regulations regarding reopenings substantial deference under the *Thomas Jefferson* standard,

4   and not greater scrutiny.

5        **B.      Whether Reopening of a Claim is Subject to Appeal.**

6        Congress delegated authority with respect to reopening claims to the Secretary: "The Secretary

7   may reopen or revise any initial determination or reconsidered determination . . . under guidelines

8   established by the Secretary in regulations."  42 U.S.C. § 1395ff(b)(1)(G).  Using that authority, the

9   Secretary promulgated regulations that allow a contractor to "reopen and revise its initial determination

10  or redetermination on its own motion:  (1) Within 1 year from the date of the initial determination or

11  redetermination for any reason; and (2) Within 4 years from the date of the initial determination or

12  redetermination for good cause as defined in § 405.986."  42 C.F.R. § 405.980(b).  The decision to

13  reopen is binding and not subject to appeal.  42 C.F.R. § 405.926(l); 42 U.S.C. § 405.980(a)(5).

14       Once a claim is reopened and revised, the revised decision is a "'separate and distinct

15  determination or decision,'" subject to the normal administrative appeal procedures.  *Anaheim Memorial*

16  *Hosp. v. Shalala*, 130 F.3d 845, 848 (9th Cir. 1997); 42 C.F.R. § 405.1889.  The right of appeal,

17  therefore, attaches only to the scope of the revision, and not to the threshold basis for reopening a claim.

18       While Plaintiff challenges the reopening of the Medicare claim at issue here, it agrees that the

19  Medicare regulations "shield from review the discretionary decision to reopen or not to reopen."

20  (Plaintiff's MSJ 9:26.)  Instead, Plaintiff argues that "[t]he regulations do not shield the *legality* of an

21  opening from review because ALJ's have authority to adjudicate all 'issues' having a material impact on

22  the appeal."  (Plaintiff's MSJ 9:28-10:1 (emphasis added).)[4]

23       Medicare regulations preclude a medical provider or ALJ from contesting a contractor's

24  discretionary decision to reopen a claim.  This court finds that there is essentially no distinction, as

_____

[4]  Plaintiff cites *Wyatt v. Barnhart*, 349 F.3d 983 (7th Cir. 2003) as an example of a court that held a reopening to be unlawful because the grounds for the reopening failed to satisfy the Medicare regulations.  That case is inapposite for several reasons.  First, the decision is not binding on this Court.  Second, *Wyatt* involved social security disability benefits while this case involves Medicare claims.  Third, *Wyatt* involved a Medicare reimbursement that had been overpaid to a beneficiary rather than to a medical provider.  Because the payment was to a beneficiary, the court factored in the "considerable hardship" that the miscalculation could cause on the individual beneficiary, and decided to construe the regulations more liberally in favor of the individual beneficiary.  349 F.3d at 986.

1   Plaintiff argues, from challenging the discretionary decision to reopen as opposed to challenging the

2   legality of the reopening, because the fact of the reopening is not appealable.  *See* 42 C.F.R. §§

3   405.980(a)(5) ("[t]he contractor's . . . decision on whether to reopen is binding and not subject to

4   appeal") and 405.926(l) ("[a]ctions that . . . are not appealable . . . include, but are not limited to . . . [a]

5   contractor's . . . determination or decision to reopen or not to reopen an initial determination,

6   redetermination, reconsideration, hearing decision, or review decision").

7          Further, the regulation states on its face that a decision on *whether* to reopen is not appealable.

8   42 C.F.R. § 405.980(a)(5).  This restriction on a provider's right to appeal a reopening encompasses not

9   only a decision not to reopen, but also a decision to reopen.  Moreover, 42 C.F.R. § 405.986(l) makes it

10  doubly explicit that "[a]ctions that are not initial determinations and are not appealable" include a

11  "decision to reopen or not to reopen an initial determination [or] redetermination."  *See Hosp. Comm.*

12  *for Livermore-Pleasanton Areas v. Johnson*, No. C-09-1786, 2010 WL 1222764, at 7 (N.D. Cal. Mar.

13  24, 2010.)

14         Under the *Thomas Jefferson* standard, this Court must "defer to the Secretary's interpretation [of

15  a regulation] unless an alternative reading is compelled by the regulation's plain language or by other

16  indications of the Secretary's intent at the time of the regulation's promulgation." 512 U.S. at 512.

17  Plaintiff's interpretation of the Medicare regulations, while perhaps not unreasonable, is not compelled

18  by the plain language of 42 C.F.R. § 405.980(a)(5).  That regulation states that the decision on "whether

19  to reopen is *binding* (emphasis added)," which indicates that the decision may not be reconsidered even

20  after the revised determination has been made.  Further, the plain language of 42 C.F.R. §§

21  405.980(a)(5) and 405.925(l) would be rendered meaningless if the Court were to adopt Plaintiff's

22  interpretation of these statutes and allow them to appeal the legality of the reopening.

23         Under *Thomas Jefferson*, the next step is to determine whether "an alternative reading is

24  compelled by the regulation's plain language or by other indications of the Secretary's intent at the time

25  of the regulation's promulgation."  512 U.S. at 512.  At the time the regulations were promulgated, the

26  agency commented in response to a concern about how the agency would enforce the good cause

27  provision. 70 Fed. Reg. 11420, 11453 (Mar. 8, 2005).  The agency stated that it would enforce the good

28  cause standard through its own internal procedures, and not through private action via an appeal.  *See id.*

8

1   The Secretary takes a consistent position with this appeal.

2        Plaintiff finally argues that the Secretary's interpretation of the Medicare regulations leaves

3   medical providers without due process of law, because it does not allow for any sort of real enforcement

4   of the good cause standard, and thus providers are left without recourse.  But a provider who is not

5   satisfied with the reopening of a claim has the option to appeal the substantive result of the reopening on

6   both administrative and judicial review.   While the provider cannot contest directly the legality or fact

7   that the claim was reopened, it is not left without due process because it can appeal the substantive

8   portion of the "initial determination, redetermination, reconsideration, or hearing decision revised by the

9   reopening."  42 C.F.R. § 405.984(f).

10       This Court finds that Plaintiff cannot challenge the decision to reopen the claim.  While

11  Plaintiff's position is not unreasonable and its effort to enforce the good cause requirement is

12  understandable, when this court applies both prongs of *Thomas Jefferson*, it must give credence to the

13  Secretary's interpretation of the Medicare regulations.  Further, under *Chevron*, this Court must accept

14  that interpretation.  Thus, this Court will not evaluate whether there was actual good cause to reopen the

15  claim because that issue is not appealable.  Plaintiff can only challenge the substantive decision finding

16  that the claim was overpaid, and here, Plaintiff does not appeal that decision.

17                                         C<small>ONCLUSION</small>

18       For the foregoing reasons, this Court **RECOMMENDS** that:

19            1.    Plaintiff's Motion for Summary Judgment be **DENIED with prejudice**; and

20            2.    Defendant's Motion for Summary Judgment be **GRANTED**.

21       This report and recommendation is submitted to the United States District Judge assigned to this

22  case pursuant to 28 U.S.C. § 636(b)(1).

23       **IT IS ORDERED** that no later than **May 26, 2010**, any party to this action may file written

24  objections with the Court and serve a copy on all parties.  The document should be captioned

25  "Objections to Report and Recommendation."

26       **IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and

27  served on all parties no later than **June 2, 2010**.  The parties are advised that failure to file objections

28  within the specified time may waive the right to raise those objections on appeal of the Court's order.

*Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED:  May 11, 2010

Hon. Nita L. Stormes
U.S. Magistrate Judge
United States District Court